(Slip Opinion)            OCTOBER TERM, 2010            1

Syllabus

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## GOODYEAR DUNLOP TIRES OPERATIONS, S. A., ET AL. *v.* BROWN ET UX., CO-ADMINISTRATORS OF THE ESTATE OF BROWN, ET AL.

CERTIORARI TO THE COURT OF APPEALS OF NORTH CAROLINA

No. 10–76.   Argued January 11, 2011 —Decided June 27, 2011

Respondents, North Carolina residents whose sons died in a bus accident outside Paris, France, filed a suit for wrongful-death damages in North Carolina state court. Alleging that the accident was caused by tire failure, they named as defendants Goodyear USA, an Ohio corporation, and petitioners, three Goodyear USA subsidiaries, organized and operating, respectively, in Luxembourg, Turkey, and France. Petitioners' tires are manufactured primarily for European and Asian markets and differ in size and construction from tires ordinarily sold in the United States. Petitioners are not registered to do business in North Carolina; have no place of business, employees, or bank accounts in the State; do not design, manufacture, or advertise their products in the State; and do not solicit business in the State or sell or ship tires to North Carolina customers. Even so, a small percentage of their tires were distributed in North Carolina by other Goodyear USA affiliates. The trial court denied petitioners' motion to dismiss the claims against them for want of personal jurisdiction. The North Carolina Court of Appeals affirmed, concluding that the North Carolina courts had general jurisdiction over petitioners, whose tires had reached the State through "the stream of commerce."

*Held:* Petitioners were not amenable to suit in North Carolina on claims unrelated to any activity of petitioners in the forum State. Pp. 6–14.

  (a) The Fourteenth Amendment's Due Process Clause sets the outer boundaries of a state tribunal's authority to proceed against a defendant. The pathmarking decision of *International Shoe Co.* v. *Washington,* 326 U. S. 310, provides that state courts may exercise

2          GOODYEAR DUNLOP TIRES OPERATIONS, S. A.
                          *v.* BROWN
                           Syllabus

personal jurisdiction over an out-of-state defendant who has "certain minimum contacts with [the State] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Id.*, at 316. Endeavoring to give specific content to the "fair play and substantial justice" concept, the Court in *International Shoe* classified cases involving out-of-state corporate defendants. First, the Court recognized that jurisdiction could be asserted where the corporation's in-state activity is "continuous and systematic" and gave rise to the episode-in-suit. *Id.*, at 317. It also observed that the commission of "single or occasional acts" in a State may be sufficient to render a corporation answerable in that State with respect to those acts, though not with respect to matters unrelated to the forum connections. *Id.*, at 318. These two categories compose what is now known as "specific jurisdiction." *Helicopteros Nacionales de Colombia, S. A.* v. *Hall*, 466 U. S. 408, 414, n. 8. *International Shoe* distinguished from cases that fit within the "specific jurisdiction" categories, "instances in which the continuous corporate operations within a state [are] so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities." 326 U. S., at 318. Adjudicatory authority so grounded is now called "general jurisdiction." *Helicopteros,* 466 U. S., at 414, n. 9. Since *International Shoe*, this Court's decisions have elaborated primarily on circumstances that warrant the exercise of specific jurisdiction. In only two decisions postdating *International Shoe* has this Court considered whether an out-of-state corporate defendant's in-state contacts were sufficiently "continuous and systematic" to justify the exercise of general jurisdiction over claims unrelated to those contacts: *Perkins* v. *Benguet Consol. Mining Co.*, 342 U. S. 437; and *Helicopteros*, 466 U. S. 408. Pp. 6–9.

    (b) Petitioners lack "the kind of continuous and systematic general business contacts" necessary to allow North Carolina to entertain a suit against them unrelated to anything that connects them to the State. *Helicopteros*, 466 U. S., at 416. The stream-of-commerce cases on which the North Carolina court relied relate to exercises of specific jurisdiction in products liability actions, in which a nonresident defendant, acting *outside* the forum, places in the stream of commerce a product that ultimately causes harm *inside* the forum. Many state long-arm statutes authorize courts to exercise specific jurisdiction over manufacturers when the events in suit, or some of them, occurred within the forum State. The North Carolina court's stream-of-commerce analysis elided the essential difference between case-specific and general jurisdiction. Flow of a manufacturer's products into the forum may bolster an affiliation germane to *specific* jurisdiction, see, *e.g.*, *World-Wide Volkswagen Corp.* v. *Woodson*, 444 U. S.

286, 297; but ties serving to bolster the exercise of specific jurisdiction do not warrant a determination that, based on those ties, the forum has general jurisdiction over a defendant. A corporation's "continuous activity of some sorts within a state," *International Shoe* instructed, "is not enough to support the demand that the corporation be amenable to suits unrelated to that activity." 326 U. S., at 318.

Measured against *Helicopteros* and *Perkins*, North Carolina is not a forum in which it would be permissible to subject petitioners to general jurisdiction. In the 1952 *Perkins* case, general jurisdiction was appropriately exercised over a Philippine corporation sued in Ohio, where the company's affairs were overseen during World War II. In *Helicopteros,* however, the survivors of U. S. citizens killed when a helicopter owned by a Colombian corporation crashed in Peru could not maintain wrongful-death actions against that corporation in Texas, where the company's contacts "consisted of sending its chief executive officer to Houston for a contract-negotiation session; accepting into its New York bank account checks drawn on a Houston bank; purchasing helicopters, equipment, and training services from [a Texas enterprise]; and sending personnel to [Texas] for training." 466 U. S., at 416. These links to Texas did not "constitute the kind of continuous and systematic general business contacts . . . found to exist in *Perkins*," and were insufficient to support the exercise of jurisdiction over a claim that neither "'ar[o]se out of' . . . no[r] related to" the defendant's activities in Texas. *Id.*, at 415–416. This Court sees no reason to differentiate from the ties to Texas held insufficient in *Helicopteros*, the sales of petitioners' tires sporadically made in North Carolina through intermediaries. Pp. 9–13.

(c) Neither below nor in their brief in opposition to the petition for certiorari did respondents urge disregard of petitioners' discrete status as subsidiaries and treatment of all Goodyear entities as a "unitary business," so that jurisdiction over the parent would draw in the subsidiaries as well. Respondents have therefore forfeited this contention. Pp. 13–14.

199 N. C. App. 50, 681 S. E. 2d 382, reversed.

GINSBURG, J., delivered the opinion for a unanimous Court.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 10–76

GOODYEAR DUNLOP TIRES OPERATIONS, S. A., ET AL., PETITIONERS *v.* EDGAR D. BROWN, ET UX., CO-ADMINISTRATORS OF THE ESTATE OF JULIAN DAVID BROWN, ET AL.

ON WRIT OF CERTIORARI TO THE COURT OF APPEALS OF NORTH CAROLINA

[June 27, 2011]

JUSTICE GINSBURG delivered the opinion of the Court.

This case concerns the jurisdiction of state courts over corporations organized and operating abroad. We address, in particular, this question: Are foreign subsidiaries of a United States parent corporation amenable to suit in state court on claims unrelated to any activity of the subsidiaries in the forum State?

A bus accident outside Paris that took the lives of two 13-year-old boys from North Carolina gave rise to the litigation we here consider. Attributing the accident to a defective tire manufactured in Turkey at the plant of a foreign subsidiary of The Goodyear Tire and Rubber Company (Goodyear USA), the boys' parents commenced an action for damages in a North Carolina state court; they named as defendants Goodyear USA, an Ohio corporation, and three of its subsidiaries, organized and operating, respectively, in Turkey, France, and Luxembourg. Goodyear USA, which had plants in North Carolina and regularly engaged in commercial activity there, did not contest

2 GOODYEAR DUNLOP TIRES OPERATIONS, S. A.
*v.* BROWN

Opinion of the Court

the North Carolina court's jurisdiction over it; Goodyear USA's foreign subsidiaries, however, maintained that North Carolina lacked adjudicatory authority over them.

A state court's assertion of jurisdiction exposes defendants to the State's coercive power, and is therefore subject to review for compatibility with the Fourteenth Amendment's Due Process Clause. *International Shoe Co.* v. *Washington*, 326 U. S. 310, 316 (1945) (assertion of jurisdiction over out-of-state corporation must comply with "'traditional notions of fair play and substantial justice'" (quoting *Milliken* v. *Meyer*, 311 U. S. 457, 463 (1940))). Opinions in the wake of the pathmarking *International Shoe* decision have differentiated between general or all-purpose jurisdiction, and specific or case-linked jurisdiction. *Helicopteros Nacionales de Colombia, S. A.* v. *Hall*, 466 U. S. 408, 414, nn. 8, 9 (1984).

A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so "continuous and systematic" as to render them essentially at home in the forum State. See *International Shoe*, 326 U. S., at 317. Specific jurisdiction, on the other hand, depends on an "affiliatio[n] between the forum and the underlying controversy," principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation. von Mehren & Trautman, Jurisdiction to Adjudicate: A Suggested Analysis, 79 Harv. L. Rev. 1121, 1136 (1966) (hereinafter von Mehren & Trautman); see Brilmayer et al., A General Look at General Jurisdiction, 66 Texas L. Rev. 721, 782 (1988) (hereinafter Brilmayer). In contrast to general, all-purpose jurisdiction, specific jurisdiction is confined to adjudication of "issues deriving from, or connected with, the very controversy that establishes jurisdiction." von Mehren & Trautman 1136.

Because the episode-in-suit, the bus accident, occurred

in France, and the tire alleged to have caused the accident was manufactured and sold abroad, North Carolina courts lacked specific jurisdiction to adjudicate the controversy. The North Carolina Court of Appeals so acknowledged. *Brown* v. *Meter*, 199 N. C. App. 50, 57–58, 681 S. E. 2d 382, 388 (2009). Were the foreign subsidiaries nonetheless amenable to general jurisdiction in North Carolina courts? Confusing or blending general and specific jurisdictional inquiries, the North Carolina courts answered yes. Some of the tires made abroad by Goodyear's foreign subsidiaries, the North Carolina Court of Appeals stressed, had reached North Carolina through "the stream of commerce"; that connection, the Court of Appeals believed, gave North Carolina courts the handle needed for the exercise of general jurisdiction over the foreign corporations. *Id.*, at 67–68, 681 S. E. 2d, at 394–395.

A connection so limited between the forum and the foreign corporation, we hold, is an inadequate basis for the exercise of general jurisdiction. Such a connection does not establish the "continuous and systematic" affiliation necessary to empower North Carolina courts to entertain claims unrelated to the foreign corporation's contacts with the State.

I

On April 18, 2004, a bus destined for Charles de Gaulle Airport overturned on a road outside Paris, France. Passengers on the bus were young soccer players from North Carolina beginning their journey home. Two 13-year-olds, Julian Brown and Matthew Helms, sustained fatal injuries. The boys' parents, respondents in this Court, filed a suit for wrongful-death damages in the Superior Court of Onslow County, North Carolina, in their capacity as administrators of the boys' estates. Attributing the accident to a tire that failed when its plies separated, the parents alleged negligence in the "design, construction, testing,

4        GOODYEAR DUNLOP TIRES OPERATIONS, S. A.
                          *v.* BROWN
                       Opinion of the Court

and inspection" of the tire. 199 N. C. App., at 51, 681 S. E. 2d, at 384 (internal quotation marks omitted).

Goodyear Luxembourg Tires, SA (Goodyear Luxembourg), Goodyear Lastikleri T. A. S. (Goodyear Turkey), and Goodyear Dunlop Tires France, SA (Goodyear France), petitioners here, were named as defendants. Incorporated in Luxembourg, Turkey, and France, respectively, petitioners are indirect subsidiaries of Goodyear USA, an Ohio corporation also named as a defendant in the suit. Petitioners manufacture tires primarily for sale in European and Asian markets. Their tires differ in size and construction from tires ordinarily sold in the United States. They are designed to carry significantly heavier loads, and to serve under road conditions and speed limits in the manufacturers' primary markets.[1]

In contrast to the parent company, Goodyear USA, which does not contest the North Carolina courts' personal jurisdiction over it, petitioners are not registered to do business in North Carolina. They have no place of business, employees, or bank accounts in North Carolina. They do not design, manufacture, or advertise their products in North Carolina. And they do not solicit business in North Carolina or themselves sell or ship tires to North Carolina customers. Even so, a small percentage of petitioners' tires (tens of thousands out of tens of millions manufactured between 2004 and 2007) were distributed within North Carolina by other Goodyear USA affiliates. These tires were typically custom ordered to equip specialized vehicles such as cement mixers, waste haulers, and boat and horse trailers. Petitioners state, and respondents

---

[1] Respondents portray Goodyear USA's structure as a reprehensible effort to "outsource" all manufacturing, and correspondingly, tort litigation, to foreign jurisdictions. See Brief for Respondents 51–53. Yet Turkey, where the tire alleged to have caused the accident-in-suit was made, is hardly a strange location for a facility that primarily supplies markets in Europe and Asia.

Cite as: 564 U. S. ____ (2011)           5

Opinion of the Court

do not here deny, that the type of tire involved in the accident, a Goodyear Regional RHS tire manufactured by Goodyear Turkey, was never distributed in North Carolina.

Petitioners moved to dismiss the claims against them for want of personal jurisdiction. The trial court denied the motion, and the North Carolina Court of Appeals affirmed. Acknowledging that the claims neither "related to, nor . . . ar[o]se from, [petitioners'] contacts with North Carolina," the Court of Appeals confined its analysis to "general rather than specific jurisdiction," which the court recognized required a "higher threshold" showing: A defendant must have "continuous and systematic contacts" with the forum. *Id.*, at 58, 681 S. E. 2d, at 388 (internal quotation marks omitted). That threshold was crossed, the court determined, when petitioners placed their tires "in the stream of interstate commerce without any limitation on the extent to which those tires could be sold in North Carolina." *Id.*, at 67, 681 S. E. 2d, at 394.

Nothing in the record, the court observed, indicated that petitioners "took any affirmative action to cause tires which they had manufactured to be shipped into North Carolina." *Id.*, at 64, 681 S. E. 2d, at 392. The court found, however, that tires made by petitioners reached North Carolina as a consequence of a "highly-organized distribution process" involving other Goodyear USA subsidiaries. *Id.*, at 67, 681 S. E. 2d, at 394. Petitioners, the court noted, made "no attempt to keep these tires from reaching the North Carolina market." *Id.*, at 66, 681 S. E. 2d, at 393. Indeed, the very tire involved in the accident, the court observed, conformed to tire standards established by the U. S. Department of Transportation and bore markings required for sale in the United States. *Ibid.*[2] As

---

[2] Such markings do not necessarily show that any of the tires were destined for sale in the United States. To facilitate trade, the Solicitor

further support, the court invoked North Carolina's "interest in providing a forum in which its citizens are able to seek redress for [their] injuries," and noted the hardship North Carolina plaintiffs would experience "[were they] required to litigate their claims in France," a country to which they have no ties. *Id.*, at 68, 681 S. E. 2d, at 394. The North Carolina Supreme Court denied discretionary review. *Brown* v. *Meter,* 364 N. C. 128, 695 S. E. 2d 756 (2010).

We granted certiorari to decide whether the general jurisdiction the North Carolina courts asserted over petitioners is consistent with the Due Process Clause of the Fourteenth Amendment. 561 U. S. ___ (2010).

## II
### A

The Due Process Clause of the Fourteenth Amendment sets the outer boundaries of a state tribunal's authority to proceed against a defendant. *Shaffer* v. *Heitner*, 433 U. S. 186, 207 (1977). The canonical opinion in this area remains *International Shoe,* 326 U. S. 310, in which we held that a State may authorize its courts to exercise personal jurisdiction over an out-of-state defendant if the defendant has "certain minimum contacts with [the State] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Id.*, at 316 (quoting *Meyer*, 311 U. S., at 463).

Endeavoring to give specific content to the "fair play and substantial justice" concept, the Court in *International Shoe* classified cases involving out-of-state corporate defendants. First, as in *International Shoe* itself, jurisdiction unquestionably could be asserted where the corpora-

---

General explained, the United States encourages other countries to "treat compliance with [Department of Transportation] standards, including through use of DOT markings, as evidence that the products are safely manufactured." Brief for United States as *Amicus Curiae* 32.

Cite as: 564 U. S. ____ (2011)           7

Opinion of the Court

tion's in-state activity is "continuous and systematic" and *that activity gave rise to the episode-in-suit*. 326 U. S., at 317. Further, the Court observed, the commission of certain "single or occasional acts" in a State may be sufficient to render a corporation answerable in that State with respect to those acts, though not with respect to matters unrelated to the forum connections. *Id.*, at 318. The heading courts today use to encompass these two *International Shoe* categories is "specific jurisdiction." See von Mehren & Trautman 1144–1163. Adjudicatory authority is "specific" when the suit "aris[es] out of or relate[s] to the defendant's contacts with the forum." *Helicopteros*, 466 U. S., at 414, n. 8.

*International Shoe* distinguished from cases that fit within the "specific jurisdiction" categories, "instances in which the continuous corporate operations within a state [are] so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities." 326 U. S., at 318. Adjudicatory authority so grounded is today called "general jurisdiction." *Helicopteros*, 466 U. S., at 414, n. 9. For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home. See Brilmayer 728 (identifying domicile, place of incorporation, and principal place of business as "paradig[m]" bases for the exercise of general jurisdiction).

Since *International Shoe*, this Court's decisions have elaborated primarily on circumstances that warrant the exercise of specific jurisdiction, particularly in cases involving "single or occasional acts" occurring or having their impact within the forum State. As a rule in these cases, this Court has inquired whether there was "some act by which the defendant purposefully avail[ed] itself of the privilege of conducting activities within the forum

8          GOODYEAR DUNLOP TIRES OPERATIONS, S. A.
                              *v.* BROWN
                         Opinion of the Court

State, thus invoking the benefits and protections of its laws." *Hanson* v. *Denckla*, 357 U. S. 235, 253 (1958). See, *e.g.*, *World-Wide Volkswagen Corp.* v. *Woodson*, 444 U. S. 286, 287, 297 (1980) (Oklahoma court may not exercise personal jurisdiction "over a nonresident automobile retailer and its wholesale distributor in a products-liability action, when the defendants' only connection with Oklahoma is the fact that an automobile sold in New York to New York residents became involved in an accident in Oklahoma"); *Burger King Corp.* v. *Rudzewicz*, 471 U. S. 462, 474–475 (1985) (franchisor headquartered in Florida may maintain breach-of-contract action in Florida against Michigan franchisees, where agreement contemplated ongoing interactions between franchisees and franchisor's headquarters); *Asahi Metal Industry Co.* v. *Superior Court of Cal., Solano Cty.*, 480 U. S. 102, 105 (1987) (Taiwanese tire manufacturer settled product liability action brought in California and sought indemnification there from Japanese valve assembly manufacturer; Japanese company's "mere awareness . . . that the components it manufactured, sold, and delivered outside the United States would reach the forum State in the stream of commerce" held insufficient to permit California court's adjudication of Taiwanese company's cross-complaint); *id.*, at 109 (opinion of O'Connor, J.); *id.*, at 116–117 (Brennan, J., concurring in part and concurring in judgment). See also Twitchell, The Myth of General Jurisdiction, 101 Harv. L. Rev. 610, 628 (1988) (in the wake of *International Shoe*, "specific jurisdiction has become the centerpiece of modern jurisdiction theory, while general jurisdiction plays a reduced role").

  In only two decisions postdating *International Shoe*, discussed *infra*, at 11–13, has this Court considered whether an out-of-state corporate defendant's in-state contacts were sufficiently "continuous and systematic" to justify the exercise of general jurisdiction over claims

Cite as: 564 U. S. ____ (2011)  9

Opinion of the Court

unrelated to those contacts: *Perkins* v. *Benguet Consol. Mining Co.*, 342 U. S. 437 (1952) (general jurisdiction appropriately exercised over Philippine corporation sued in Ohio, where the company's affairs were overseen during World War II); and *Helicopteros*, 466 U. S. 408 (helicopter owned by Colombian corporation crashed in Peru; survivors of U. S. citizens who died in the crash, the Court held, could not maintain wrongful-death actions against the Colombian corporation in Texas, for the corporation's helicopter purchases and purchase-linked activity in Texas were insufficient to subject it to Texas court's general jurisdiction).

B

To justify the exercise of general jurisdiction over petitioners, the North Carolina courts relied on the petitioners' placement of their tires in the "stream of commerce." See *supra*, at 5. The stream-of-commerce metaphor has been invoked frequently in lower court decisions permitting "jurisdiction in products liability cases in which the product has traveled through an extensive chain of distribution before reaching the ultimate consumer." 18 W. Fletcher, Cyclopedia of the Law of Corporations §8640.40, p. 133 (rev. ed. 2007). Typically, in such cases, a nonresident defendant, acting *outside* the forum, places in the stream of commerce a product that ultimately causes harm *inside* the forum. See generally Dayton, Personal Jurisdiction and the Stream of Commerce, 7 Rev. Litigation 239, 262–268 (1988) (discussing origins and evolution of the stream-of-commerce doctrine).

Many States have enacted long-arm statutes authorizing courts to exercise specific jurisdiction over manufacturers when the events in suit, or some of them, occurred within the forum state. For example, the "Local Injury; Foreign Act" subsection of North Carolina's long-arm statute authorizes North Carolina courts to exercise per-

10 GOODYEAR DUNLOP TIRES OPERATIONS, S. A.
*v.* BROWN

Opinion of the Court

sonal jurisdiction in "any action claiming injury to person or property within this State arising out of [the defendant's] act or omission outside this State," if, "in addition[,] at or about the time of the injury," "[p]roducts . . . manufactured by the defendant were used or consumed, within this State in the ordinary course of trade." N. C. Gen. Stat. Ann. §1–75.4(4)(b) (Lexis 2009).[3] As the North Carolina Court of Appeals recognized, this provision of the State's long-arm statute "does not apply to this case," for both the act alleged to have caused injury (the fabrication of the allegedly defective tire) and its impact (the accident) occurred outside the forum. See 199 N. C. App., at 61, n. 6, 681 S. E. 2d, at 390, n. 6.[4]

The North Carolina court's stream-of-commerce analysis elided the essential difference between case-specific and all-purpose (general) jurisdiction. Flow of a manufacturer's products into the forum, we have explained, may bolster an affiliation germane to *specific* jurisdiction. See, *e.g.*, *World-Wide Volkswagen*, 444 U. S., at 297 (where "the sale of a product . . . is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve . . . the market for its product in [several]

───────────

[3] Cf. D. C. Code §13–423(a)(4) (2001) (providing for specific jurisdiction over defendant who "caus[es] tortious injury in the [forum] by an act or omission outside the [forum]" when, in addition, the defendant "derives substantial revenue from goods used or consumed . . . in the [forum]").

[4] The court instead relied on N. C. Gen. Stat. Ann. §1–75.4(1)(d), see 199 N. C. App., at 57, 681 S. E. 2d, at 388, which provides for jurisdiction, "whether the claim arises within or without [the] State," when the defendant "[i]s engaged in substantial activity within this State, whether such activity is wholly interstate, intrastate, or otherwise." This provision, the North Carolina Supreme Court has held, was "intended to make available to the North Carolina courts the full jurisdictional powers permissible under federal due process." *Dillon* v. *Numismatic Funding Corp.*, 291 N. C. 674, 676, 231 S. E. 2d 629, 630 (1977).

Cite as: 564 U. S. ____ (2011)           11

Opinion of the Court

States, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise *has there been the source of injury to its owner or to others*" (emphasis added)). But ties serving to bolster the exercise of specific jurisdiction do not warrant a determination that, based on those ties, the forum has *general* jurisdiction over a defendant. See, *e.g.*, *Stabilisierungsfonds Fur Wein* v. *Kaiser Stuhl Wine Distributors Pty. Ltd.*, 647 F. 2d 200, 203, n. 5 (CADC 1981) (defendants' marketing arrangements, although "adequate to permit litigation of claims relating to [their] introduction of . . . wine into the United States stream of commerce, . . . would not be adequate to support general, 'all purpose' adjudicatory authority").

A corporation's "continuous activity of some sorts within a state," *International Shoe* instructed, "is not enough to support the demand that the corporation be amenable to suits unrelated to that activity." 326 U. S., at 318. Our 1952 decision in *Perkins* v. *Benguet Consol. Mining Co.* remains "[t]he textbook case of general jurisdiction appropriately exercised over a foreign corporation that has not consented to suit in the forum." *Donahue* v. *Far Eastern Air Transport Corp.*, 652 F. 2d 1032, 1037 (CADC 1981).

Sued in Ohio, the defendant in *Perkins* was a Philippine mining corporation that had ceased activities in the Philippines during World War II. To the extent that the company was conducting any business during and immediately after the Japanese occupation of the Philippines, it was doing so in Ohio: the corporation's president maintained his office there, kept the company files in that office, and supervised from the Ohio office "the necessarily limited wartime activities of the company." *Perkins*, 342 U. S., at 447–448. Although the claim-in-suit did not arise in Ohio, this Court ruled that it would not violate due process for Ohio to adjudicate the controversy. *Ibid.*; see *Keeton* v. *Hustler Magazine, Inc.*, 465 U. S. 770, 779–780,

12        GOODYEAR DUNLOP TIRES OPERATIONS, S. A.
                        *v.* BROWN
                     Opinion of the Court

n. 11 (1984) (Ohio's exercise of general jurisdiction was permissible in *Perkins* because "Ohio was the corporation's principal, if temporary, place of business").

We next addressed the exercise of general jurisdiction over an out-of-state corporation over three decades later, in *Helicopteros*. In that case, survivors of United States citizens who died in a helicopter crash in Peru instituted wrongful-death actions in a Texas state court against the owner and operator of the helicopter, a Colombian corporation. The Colombian corporation had no place of business in Texas and was not licensed to do business there. "Basically, [the company's] contacts with Texas consisted of sending its chief executive officer to Houston for a contract-negotiation session; accepting into its New York bank account checks drawn on a Houston bank; purchasing helicopters, equipment, and training services from [a Texas enterprise] for substantial sums; and sending personnel to [Texas] for training." 466 U. S., at 416. These links to Texas, we determined, did not "constitute the kind of continuous and systematic general business contacts . . . found to exist in *Perkins*," and were insufficient to support the exercise of jurisdiction over a claim that neither "ar[o]se out of . . . no[r] related to" the defendant's activities in Texas. *Id.*, at 415–416 (internal quotation marks omitted).

*Helicopteros* concluded that "mere purchases [made in the forum State], even if occurring at regular intervals, are not enough to warrant a State's assertion of [general] jurisdiction over a nonresident corporation in a cause of action not related to those purchase transactions." *Id.*, at 418. We see no reason to differentiate from the ties to Texas held insufficient in *Helicopteros*, the sales of petitioners' tires sporadically made in North Carolina through intermediaries. Under the sprawling view of general jurisdiction urged by respondents and embraced by the North Carolina Court of Appeals, any substantial manu-

facturer or seller of goods would be amenable to suit, on any claim for relief, wherever its products are distributed. But cf. *World-Wide Volkswagen*, 444 U. S., at 296 (every seller of chattels does not, by virtue of the sale, "appoint the chattel his agent for service of process").

   Measured against *Helicopteros* and *Perkins*, North Carolina is not a forum in which it would be permissible to subject petitioners to general jurisdiction.  Unlike the defendant in *Perkins*, whose sole wartime business activity was conducted in Ohio, petitioners are in no sense at home in North Carolina.  Their attenuated connections to the State, see *supra*, at 4–5, fall far short of the "the continuous and systematic general business contacts" necessary to empower North Carolina to entertain suit against them on claims unrelated to anything that connects them to the State.  *Helicopteros*, 466 U. S., at 416.[5]

C

   Respondents belatedly assert a "single enterprise" theory, asking us to consolidate petitioners' ties to North Carolina with those of  Goodyear USA and other Goodyear entities.  See Brief for Respondents 44–50.  In effect,

---

   [5]As earlier noted, see *supra*, at 6, the North Carolina Court of Appeals invoked the State's "well-recognized interest in providing a forum in which its citizens are able to seek redress for injuries that they have sustained."  199 N. C. App., at 68, 681 S. E. 2d, at 394.  But "[g]eneral jurisdiction to adjudicate has in [United States] practice never been based on the plaintiff's relationship to the forum.  There is nothing in [our] law comparable to . . . article 14 of the Civil Code of France (1804) under which the French nationality of the plaintiff is a sufficient ground for jurisdiction."  von Mehren & Trautman 1137; see Clermont & Palmer, Exorbitant Jurisdiction, 58 Me. L. Rev. 474, 492–495 (2006) (French law permitting plaintiff-based jurisdiction is rarely invoked in the absence of other supporting factors).  When a defendant's act outside the forum causes injury in the forum, by contrast, a plaintiff's residence in the forum may strengthen the case for the exercise of *specific jurisdiction*.  See *Calder* v. *Jones*, 465 U. S. 783, 788 (1984); von Mehren & Trautman 1167–1173.

14  GOODYEAR DUNLOP TIRES OPERATIONS, S. A.
*v.* BROWN

Opinion of the Court

respondents would have us pierce Goodyear corporate veils, at least for jurisdictional purposes. See Brilmayer & Paisley, Personal Jurisdiction and Substantive Legal Relations: Corporations, Conspiracies, and Agency, 74 Cal. L. Rev. 1, 14, 29–30 (1986) (merging parent and subsidiary for jurisdictional purposes requires an inquiry "comparable to the corporate law question of piercing the corporate veil"). But see 199 N. C. App., at 64, 681 S. E. 2d, at 392 (North Carolina Court of Appeals understood that petitioners are "separate corporate entities . . . not directly responsible for the presence in North Carolina of tires that they had manufactured"). Neither below nor in their brief in opposition to the petition for certiorari did respondents urge disregard of petitioners' discrete status as subsidiaries and treatment of all Goodyear entities as a "unitary business," so that jurisdiction over the parent would draw in the subsidiaries as well.[6] Brief for Respondents 44. Respondents have therefore forfeited this contention, and we do not address it. This Court's Rule 15.2; *Granite Rock Co.* v. *Teamsters*, 561 U. S. \_\_\_, \_\_\_ (2010) (slip op., at 16).

\* \* \*

For the reasons stated, the judgment of the North Carolina Court of Appeals is

*Reversed.*

---

[6] In the brief they filed in the North Carolina Court of Appeals, respondents stated that petitioners were part of an "integrated worldwide efforts to design, manufacture, market and sell *their tires* in the United States, including in North Carolina." App. 485 (emphasis added). See also Brief in Opposition 18. Read in context, that assertion was offered in support of a narrower proposition: The distribution of petitioners' tires in North Carolina, respondents maintained, demonstrated petitioners' own "calculated and deliberate efforts to take advantage of the North Carolina market." App. 485. As already explained, see *supra*, at 12–13, even regularly occurring sales of a product in a State do not justify the exercise of jurisdiction over a claim unrelated to those sales.